UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **GREGORY L. GIBSON,**<br>    **Plaintiff,** | : | **3:21-cv-593** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **HENKEL OF AMERICA, INC; HENKEL** | : | |
| **OF AMERICA RETIREMENT PLAN;** | : | |
| **LOCTITE CORPORATION; TEROSON,** | : | |
| **INC.; PARKER & AMCHEM; HENKEL** | : | |
| **TECHNOLOGIES; HENKEL AG & CO.,** | : | |
| **KGaA; HENKEL ASIA-PACIFIC LTD.;** | : | |
| **SHANGHAI-HENKEL TEROSON, LTD.;** | : | |
| **and HENKEL (CHINA) INVESTMENT** | : | |
| **COMPANY, LTD.,** | : | **APRIL 29, 2021** |
|     **Defendants.** | : | |

## COMPLAINT

1.      Plaintiff Gregory L. Gibson is an individual who resides at 1913 General Warfield

Way, Lexington, Kentucky.

2.      Defendant Henkel of America, Inc. ("Henkel") is a corporation with an office at 1

Henkel Way, Rocky Hill, Connecticut.

3.      Henkel is part of a multi-national conglomerate headquartered in Germany that

wholly owns Defendant Henkel of America, Inc., a holding company, and produces adhesives,

laundry and personal care products, and industrial chemicals, among other things.

4.      Defendants Parker & Amchem and Teroson, Inc., were corporations that have

been absorbed into Defendant Henkel Technologies, an entity with an office at 32100

Stephenson Highway, Madison Heights, Michigan, which does business in Connecticut and, on

information and believe, provides pension benefits to its employees by way of the Plan that

specifies that claims regarding it must be adjudicated in Connecticut.

26256.000/749024.8

5.      Defendant Loctite Corporation is a corporation with an office at 1001 Henkel Way, Rocky Hill, Connecticut.

6.      Defendant Henkel AG & Co., KGaA, is an entity with an office at 67 Henkel Straße, Düsseldorf, Germany, which does business in Connecticut through various entities it controls and, on information and belief, through the control it exercises over pensions of U.S. employees by way of the Plan that specifies that claims regarding it must be adjudicated in Connecticut.

7.      Defendants Henkel Asia-Pacific Ltd., and Shanghai-Henkel Teroson, Inc., were entities that have been absorbed into Defendant Henkel (China) Investment Company, Ltd., with an office at Building 7 The Springs Center, No. 99 Jiang Wan Chong Road, Yang Pu District, Shanghai, China.

8.      Henkel (China) Investment Company, Ltd., is subject to jurisdiction in Connecticut because it is the successor entity to entities for which Mr. Gibson worked, which entities provided pension benefits through either Henkel or the Plan, and the Plan specifies that claims regarding it must be adjudicated in Connecticut.

9.      Defendant Henkel of America Retirement Plan (the "Plan") is a pension plan subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") and sponsored by Henkel.

10.     Henkel of America, Inc. Benefits Administrative Committee (the "Plan Administrator") is the administrator of the Plan based at 7201 E. Henkel Way, Scottsdale, Arizona.

11.     The Plan Trustee is State Street Bank and Trust Company, a company with offices at One Lincoln Street, Boston, Massachusetts.

26256.000/749024.8

12.     Mr. Gibson brings this action pursuant to section 502 of ERISA, 29 U.S.C. §

1132(a)(1)(B), to recover benefits due to him from Henkel or an affiliated entity and/or the Plan,

and also seeks a declaratory judgment and asserts a common law claim arising from breach of

contract not governed by ERISA.

13.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) and

because of the diverse citizenship of the parties and the fact that Mr. Gibson seeks damages in

excess of $75,000.

14.     Venue is proper in this District because the Plan's Summary Plan Description

provides that any actions brought in connection with the Plan must be brought in "federal district

court in Hartford, Connecticut" and because Henkel has a headquarters in Connecticut.

15.     The Plan provides retirement benefits for employees and contractors of Henkel

and its affiliates.

16.     Mr. Gibson worked for affiliates of Henkel Corporation for approximately 19

years, ending on January 6, 1997.

17.     From 1978 to 1983, Mr. Gibson was an employee of the B.F. Goodrich adhesives

and coatings division, which was sold to Sovereign Chemical, which was acquired by Henkel.

18.     From 1983 to 1992, Mr. Gibson was a full-time contractor working for Loctite

Corporation ("Loctite").

19.     From 1983 to 1992, Henkel owned an interest in Loctite, ranging from 28 to 32

percent, and Henkel had significant influence over the decisions made by Loctite.

20.     From 1983 to 1992, Mr. Gibson's work was directed by Johannes Dahs and others

at Henkel Corporation in Düsseldorf, Germany.

21.     From 1992 to 1994, Mr. Gibson was an employee of Henkel subsidiary Teroson, Inc.

22.     From 1994 to 1997, Mr. Gibson worked in China tasked with establishing a German-Chinese joint venture called Shanghai-Henkel Teroson, Ltd., with his compensation paid in part by Henkel affiliate Parker & Amchem and paid in part by Henkel Asia-Pacific, Inc., a holding company within the Henkel conglomerate.

23.     On information and belief, Teroson, Inc., was a U.S. corporation created at the time of the acquisition by Henkel KGaA (a German entity) of the global Teroson business from W.R. Grace, and Teroson, Inc., was wholly owned by Henkel from 1994 to 1997.

24.     During the time periods listed above, Mr. Gibson was a participant in the Henkel Corporation Retirement Plan.

25.     On information and belief, the Henkel Corporation Retirement Plan and the retirement plans of the above entities were merged into the Plan at various times and/or persons covered by the Plan received credit for service with the above entities.

26.     Mr. Gibson worked for Henkel to advance its business primarily in adhesives, sealants, and coatings applicable to the automotive and aerospace industries, helping Henkel to acquire and integrate companies into Henkel's worldwide operations, and working over the years in Michigan, Ohio, Illinois, Pennsylvania, and Connecticut, in addition to France, Japan, Germany, and China, where he helped to launch Henkel's adhesives, sealants, and coatings business through the Chinese-German joint venture.

27.     During the various engagements referenced above, Henkel and its affiliates repeatedly told Mr. Gibson that the amount of his pension would be based on his total annual

26256.000/749024.8

earnings from the entities that employed him, regardless of whether such earnings were taxable in the United States.

28.     Henkel Asia-Pacific Ltd. paid Mr. Gibson a base salary of $115,000 per year, and he was eligible for, and received, a bonus of 15 percent, later increased to 20 percent. Thus, Mr. Gibson earned the following compensation in China in the following years:

```
1993:  $  71,337
1994:  $138,500
1995:  $138,500
1996:  $138,500
```

29.     Henkel Asia-Pacific Ltd. explained to Mr. Gibson that his benefits coverage would be split into two parts: "continued coverage under the Henkel Corp. plans" and "new coverage under the Henkel Group Corporate Plans." The company further explained that, although the Teroson, Inc., pension plan then in effect "will continue to apply," it would:

be necessary to take provisions (eventually in unqualified schemes) to make sure that the following salary portions are covered

| | | |
|---|---|---|
| Base Salary | US$ | 72,500 p.a. |
| Position Allowance | US$ | 10,000 p.a. |
| Total | US$ | 82,500 p.a. |

30.     By the above-quoted language, Henkel explained to Mr. Gibson that his entire compensation while working for the German-Chinese joint venture would be used to calculate his ultimate pension payments, although part of that would be through a qualified pension plan and the remainder through the unqualified pension scheme.

31.     The language quoted above was contained in a letter dated June 27, 1994, from Werner Krieger, who was Senior Vice President of Human Resources for Henkel KGaA and Vice President of Human Resources for Henkel-Asia Pacific Ltd., and had the power to bind Henkel Corporation and its affiliates, and who was writing on Henkel Asia-Pacific Ltd., letterhead to Joe Marrotta, a senior executive at Teroson, Inc., based in the United States.

26256.000/749024.8

32.     Mr. Krieger wrote again to Mr. Marrotta the following day, June 28, 1994, to state: "Please be advised that the Pension Plan benefit coverage for Greg includes service to Loctite and continued coverage under Henkel Corp. plans."

33.     Notwithstanding Mr. Krieger's instructions, Mr. Marrotta failed to cause the Henkel pension records to reflect Mr. Gibson's full compensation, but instead told Mr. Gibson repeatedly that those adjustments would be made once the various corporate acquisitions and re-alignments were complete, thus letting matters linger until Mr. Marrotta resigned from Henkel.

34.     On information and belief, Mr. Marrotta failed to address Mr. Gibson's promised pension arrangement because either Parker & Amchem or Teroson, Inc., would then have had to find a source of funding for the pension obligation, and instead he simply ignored the problem and left the company.

35.     In the alternative, on information and belief, Mr. Marrotta passed the pension request along to the Plan Administrator who failed to take the appropriate actions.

36.     Henkel senior executives at various times similarly orally promised Mr. Gibson that his entire compensation would be credited toward his pension, including Werner Krieger.

37.     Acting in reliance on the above-referenced statements by Henkel, Mr. Gibson continued working to advance Henkel's international business ventures.

38.     On March 25, 2013, Henkel wrote to Mr. Gibson to acknowledge the "special agreement" they had reached years earlier regarding his pension, although the letter, on letterhead that simply said "Henkel," did not clearly indicate the Henkel entity that was acknowledging the special agreement and the letter was not signed by any individual (indicating only that it came from "Retiree Service Center").

26256.000/749024.8

39.     The 2013 letter explained that Mr. Gibson was eligible not only for a qualified plan benefit from the Plan, but also for a non-qualified pension benefit that would make up the difference between his qualified pension based on U.S. taxable income and his total income while working abroad for Henkel.

40.     In April 2019, Henkel wrote to Mr. Gibson to further describe the arrangement, noting that "a special agreement between Henkel and the Plan was reached to provide you a non-qualified Plan benefit for your employment between March 2, 1982 and December 31, 1991, and a qualified Plan benefit for your employment between January 1, 1992 and January 6, 1997." (Henkel and its affiliates used the words "unqualified" and "non-qualified" to have the same meaning, and they have the same meaning herein.)

41.     In the April 2019 letter, Henkel conceded that it had provided notice to Mr. Gibson of his pension benefit but "did not include the non-qualified Plan benefit," and apologized for the "oversight."

42.     The April 2019 letter was on "Henkel" letterhead but did not clearly indicate which Henkel entity wrote the letter, and it was signed only "Claims and Appeals Management."

43.     In the April 2019 letter, Henkel "approved" of Mr. Gibson's request that his pension benefit be calculated so as to account for all of his compensation when working for Henkel and its affiliates, but determined that "an 'all-service' calculation . . . under the Plan formula using your total employment from March 2, 1982 to January 6, 1997" produced a retirement benefit at age 65 of $1,134.71 per month – an amount less than the amount to which Mr. Gibson is entitled.

44.     Henkel erred again in June 2020, writing to Mr. Gibson to say his qualified plan benefit on retirement would be $386.69 per month and his non-qualified benefit would be $748.02 per month, for the same total figure of $1,134.71

45.     The proposed retirement benefit of $1,134.71 per month was significantly less than the $1,832 per month that Henkel in April 2015 had told Mr. Gibson he would receive in qualified Plan benefits alone.

46.     Henkel reached the wrong conclusion regarding Mr. Gibson's benefits largely by counting only a portion of his earnings while working for the Chinese-German joint venture.

47.     Specifically, in its April 2019 letter, Henkel stated that Mr. Gibson's final average earnings were, by year:

        1992:   $60,000.00
        1993:   $71,337.96
        1994:   $73,287.86
        1995:   $61,190.02

48.     By this mis-calculation, Henkel failed to abide by Mr. Krieger's instruction in 1994 that "unqualified schemes" would be used to make sure that $82,500 in annual compensation paid to Mr. Gibson while in China would count toward his pension.

49.     Because  Mr. Gibson's compensation while in China was $115,000 plus a 20-percent bonus, Henkel in 2019 was under-counting his joint-venture compensation by approximately half, and thereby underestimating his proper pension benefit, which is calculated as a percentage of the "four consecutive completed calendar years which produce the highest amount" pursuant to section 1.2.7 of the Henkel Corporation Retirement Plan (As Amended and Restated Effective January 1, 1998) (the "1998 Plan Document").

50.     By using improperly low compensation figures from 1992 to 1995, instead of the proper compensation figures from 1993 to 1996 – producing an average annual compensation of

only $66,434 instead of $136,543 – the Henkel greatly under-calculated the monthly retirement

benefit that will be due to Mr. Gibson after he reaches retirement age, in contravention not only

of the special agreement but also of section 1.2.13 of the 1998 Plan Document, which requires

that a participant's compensation be determined by considering "the Participant's regular base

wage or salary actually received and all additional items of compensation to the extent such

compensation is for services rendered."

51.     Through counsel, Mr. Gibson in October 2019 questioned Henkel's compensation

and benefit calculations for the reasons described above and asked that the calculations be

corrected.

52.     Henkel replied to Mr. Gibson's counsel by way of a letter dated August 19, 2020,

in which Henkel stated that "no further action will be taken" regarding Mr. Gibson's request to

correct his pension calculations.

53.     After the August 19, 2020, letter, with the world in the grip of the coronavirus

pandemic, Mr. Gibson has been unable to obtain further substantive communication from the

Plan or from Henkel or its affiliates regarding the under-calculation of Mr. Gibson's pension

benefit.

**COUNT ONE – BREACH OF CONTRACT (as to Henkel and its affiliates)**

54.     Paragraphs 1 through 52, above, are hereby incorporated into Count One.

55.     Henkel and/or its affiliate corporations entered into a contract with Mr. Gibson

when Henkel and Mr. Gibson reached their "special agreement" and Henkel promised to use

"unqualified schemes" to assure that Mr. Gibson's pension would be calculated based on his

entire earnings while working for the joint venture in China.

26256.000/749024.8

56.     Mr. Gibson acted in reliance on that contract by agreeing, and continuing, to work in China for the benefit of Henkel.

57.      Henkel's refusal to take further action regarding Mr. Gibson's request for full consideration of his earnings constituted an anticipatory breach of contract, in that Henkel effectively told Mr. Gibson that it would underpay his pension benefits after he retires and draws a pension.

58.     Henkel's anticipatory breach will cause damage to Mr. Gibson in excess of $75,000.

**COUNT TWO – ERISA (as to Henkel)**

59.     Paragraphs 1 through 52 are hereby incorporated into Count Two.

60.     The "special agreement" between Henkel and Mr. Gibson created a non-qualified pension plan subject to ERISA.

61.     The non-qualified pension plan is intended to provide retirement benefits to Mr. Gibson based on his earnings while in China that were not factored into his benefit from the Plan.

62.     Mr. Gibson is the only participant in the non-qualified pension plan.

63.     Henkel never provided Mr. Gibson any plan documents, including a description of the non-qualified plan's claims procedure.

64.     Henkel's failure to provide the claims procedure means that Mr. Gibson was never informed of the procedure by which he could contest or appeal decisions regarding his non-qualified plan benefits, and Mr. Gibson was never informed as to which entity he could sue should Henkel deny him his promised pension benefit.

65.     Any ERISA requirement that Mr. Gibson exhaust administrative remedies, and specifically any requirement that Mr. Gibson appeal the "no further action" determination, was waived by the Henkel and its affiliates because they failed to provide any description of any appeal procedure and because any such appeal would have been futile.

66.     Pursuant to 29 U.S.C. § 1132(a)(1)(B), Mr. Gibson seeks an order that Henkel and/or its affiliates recalculate the non-qualified benefit due to Mr. Gibson to reflect his full compensation, as promised, and pay him that amount after he reaches retirement age.

**COUNT THREE – ERISA (as to the Plan)**

67.     Paragraphs 1 through 52 are hereby incorporated into Count Three.

68.     The Plan incorrectly calculated the benefits payable to Mr. Gibson pursuant to the Plan documents because the compensation used to determine the benefit did not include all the applicable compensation.

69.     Mr. Gibson made a claim to have the correct benefits determined, but to date the Plan has not denied or approved the claim.

70.     Mr. Gibson requests an order that his benefit under the qualified Plan be recalculated using all of his compensation during the years from 1993 to 1996.

**COUNT FOUR – Declaratory Judgment (as to all Defendants)**

71.     Paragraphs 1 through 52 are hereby incorporated into Count Four.

72.     The parties are adverse and are engaged in an actual controversy as to their rights and legal relations.

73.     Mr. Gibson requests a declaratory judgment that he is entitled to a pension as promised by Werner Krieger and others that is calculated using all of his compensation during the years from 1993 to 1996.

**PRAYER FOR RELIEF**

Mr. Gibson seeks the following relief:

1.      Damages in the amount of the difference between the pension benefit the Plan is proposing to provide and the benefit he was promised (Count One);

2.      An order that Henkel and/or its affiliates recalculate the non-qualified benefit due to Mr. Gibson to reflect his full compensation, as promised, and pay him that amount after he reaches retirement age (Count Two);

3.      An order that his benefit under the qualified Plan be recalculated using all of his compensation during the years from 1993 to 1996 (Count Three);

4.      A declaratory judgment that Mr. Gibson is entitled to a pension calculated using all of his compensation during the years from 1993 to 1996 (Count Four);

5.      Attorneys' fees (Counts Two and Three);

6.      Such other relief as the Court may deem just and equitable.

**PLAINTIFF**
**GREGORY L. GIBSON**


By: */s/ Brian O'Donnell*
    Brian O'Donnell ct16041
    Pamela Fleming ct11916
    Mary Mintel Miller ct28994
    Reid and Riege, P.C.
    One Financial Plaza, 21st Fl.
    Hartford, CT 06103
    Phone: (860) 240-1012
    Fax: (860) 240-1002
    bodonnell@rrlawpc.com
    pfleming@rrlawpc.com
    mmiller@rrlawpc.com

26256.000/749024.8